**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CATHERINE THORNE,** *Plaintiff,* | : | **CIVIL ACTION** |
| **v.** | : | |
| **LOEWS PHILADELPHIA HOTEL, INC. et al.,** *Defendants.* | : | **No. 15-3837** |

**MEMORANDUM**

PRATTER, J. JULY 26, 2016

Catherine Thorne sued Loews Philadelphia Hotel; Twelfth Street Hotel Associates, L.P.; LPH Partner, Inc.; Loews Hotel Holding Company (collectively "Loews Entities"); LLB Gym LLC, d/b/a 12 Fit Spa and Gym ("12Fit"); and Jerome McNeill for assault, battery and negligence, among other claims, following her alleged sexual assault by Mr. McNeill. During Mr. McNeill's deposition by his co-defendants, Mr. McNeill invoked his Fifth Amendment privilege against self-incrimination, but only after providing answers to select questions. The Loews Entities and 12Fit have filed a Motion to Compel Mr. McNeill's deposition and testimony, arguing that because of his partial answers he has waived his Fifth Amendment privilege. The Court agrees and will grant the motion.

## I. FACTUAL BACKGROUND

Ms. Thorne alleges that Mr. McNeill, a massage therapist who previously worked at the 12Fit Spa at the Loews Hotel in Philadelphia, sexually assaulted her while providing her with massage services on October 16, 2014. With respect to 12Fit and the Loews Entities, Ms. Thorne alleges that both acted negligently and "in reckless indifference to the safety and well-being of

Ms. Thorne and other patrons by employing Mr. McNeill as a massage therapist." 2d Am. Compl. at ¶ 14., Docket No. 77.

In Mr. McNeill's answer to the First Amended Complaint, he denied Ms. Thorne's allegations through specific and general denials. Thereafter, counsel representing 12Fit and the Loews Entities deposed Mr. McNeill. At the commencement of Mr. McNeill's deposition, counsel for 12Fit asked: "do you understand that if you give testimony here today, that you have, in essence, waived your Fifth Amendment right against self-incrimination in a criminal trial and the district attorney's office can use this deposition in any way they want?" Def.'s Dep. 6:6-12, Def.'s Mot. to Compel, Docket No. 55, Ex. 3. In response, Mr. McNeill stated that he understood. Mr. McNeill also recognized his right to have an attorney present and gave his consent to proceed without one.

During his deposition, Mr. McNeill voluntarily testified about his previous employment, parts of his criminal history, his education, and his previous residences. He admitted to being charged with unlawful contact with a minor and to being incarcerated in connection with that charge. He also testified that the charge was ultimately dropped. In further review of his criminal history, Mr. McNeill testified to being charged with fleeing and eluding the police on his motorcycle in 2013. Mr. McNeill admitted that currently there are criminal proceedings pending against him in Philadelphia and Montgomery counties, as well.

Shortly after Mr. McNeill testified to confirm the criminal proceedings pending against him, his attorney in the Montgomery County criminal matter arrived and entered the deposition room. After noting his presence for the record, he stated that "[Mr. McNeill] does not waive his rights to self-incriminate [sic] himself." *Id.* at 43:20-21. With his criminal attorney present, Mr. McNeill proceeded with his deposition. Specifically, Mr. McNeill spoke about his employment

as a massage therapist at Hand & Stone Spa, his place of employment prior to 12Fit. Mr. McNeill testified to the location of the spa, his hours, and the means through which he received appointments. Despite Mr. McNeill testifying willingly, when counsel for 12Fit mentioned allegations arising out of Mr. McNeill's employment at Hand & Stone, his criminal attorney immediately objected. Thereafter, he confirmed that he planned to direct Mr. McNeill not to answer any questions concerning the circumstances surrounding the alleged Hand & Stone incident, and instructed Mr. McNeill to invoke his Fifth Amendment right against self-incrimination.

Counsel for 12Fit next inquired into Mr. McNeill's employment with the Loews Entities and 12Fit. Mr. McNeill confirmed that he worked for 12Fit as a massage therapist. Further, he confirmed that when applying for employment at 12Fit, he omitted his previous work with Hand & Stone from his resume. When 12Fit's counsel asked why Mr. McNeill's resume did not list Hand & Stone, his criminal attorney indicated that Mr. McNeill would "take the Fifth." Mr. McNeill also asserted his Fifth Amendment privilege when 12Fit's counsel inquired into an incident at Hand & Stone in connection with which Mr. McNeill was arrested.

Thereafter, counsel for 12Fit asked Mr. McNeill about the day on which Ms. Thorne came in for a massage. Mr. McNeill testified to providing Ms. Thorne with a sports massage. He stated, "Well, she requested a sports massage in her gluteal area and a regular massage in the rest of her body." *Id.* at 79:24 – 80:1-2.  He expanded, stating, "[H]er exact words were, My butt hurts. Can you massage it? Can you do a sports massage?" *Id.* at 80:5-7. Counsel for 12Fit then presented Mr. McNeill with the Client Intake Form filled out by Ms. Thorne prior to her massage, on which she had indicated "left lower back" in response to the form's question, "Is there a particular area of the body where you're experiencing tension, stiffness, pain or other

discomfort?" *Id.* at 82: 18-22. When 12Fit's counsel asked how Mr. McNeill came to know Ms. Thorne wanted a sports massage including her buttocks despite it not being listed on the form, Mr. McNeill stated that Ms. Thorne had verbally requested this of him.

After confirming that Ms. Thorne had come into the massage room and asked Mr. McNeill for a sports massage, 12Fit's counsel stated, "Tell me then what happened." *Id.* at 85: 8-9. Mr. McNeill's criminal attorney objected, stating that Mr. McNeill was going to invoke his Fifth Amendment rights as to what happened after Ms. Thorne entered the room. In seeking to confirm this position, counsel for 12Fit asked, "Is it fair to say that if any of the attorneys in this room question Mr. McNeill about what happened, who said what to whom during that massage at the spa at the Loews Hotel, that you're going to instruct your client to assert his Fifth Amendment privilege?" *Id.* at 85: 16-22. Mr. McNeill's criminal attorney responded: "Yes. Except for one question." *Id.* at 85:23-24. Thereafter, Mr. McNeill volunteered that he completed Ms. Thorne's massage and that she tipped him $10. When 12Fit's counsel asked if Ms. Thorne said anything to Mr. McNeill at the end of the massage, Mr. McNeill invoked his privilege against self-incrimination.

In response to many of deposing counsels' subsequent efforts to glean details of Mr. McNeill's interaction with Ms. Thorne, Mr. McNeill's criminal attorney objected, invoking Mr. McNeill's Fifth Amendment rights. This was the case when counsel for the Loews Entities asked if Mr. McNeill wore any type of gloves when performing Ms. Thorne's massage. It was also the case when counsel for the Loews Entities asked if Mr. McNeill had met any of the employees of the Loews Hotel prior to Ms. Thorne's massage. Counsel for 12Fit noted for the record that it was their position that Mr. McNeill had waived his Fifth Amendment right completely. To this, Mr. McNeill's criminal attorney responded: "Well, and my argument is, he has a right to answer

a Civil complaint, otherwise, they would just get a judgment against him. And he's denying it . . . he's not waiving – he will never waive his Fifth Amendment right. He's trying to be helpful here." *Id.* at 108: 21-24 – 109:7-9. It is from this dispute – whether or not Mr. McNeill has effectively waived his Fifth Amendment rights – that the pending motion arises.

Defendants Loews Entities and 12Fit filed their motion, seeking an order compelling Mr. McNeill to appear for deposition and to answer all questions to which he has asserted his Fifth Amendment rights. Ms. Thorne responded to the motion, asking the Court to strike Mr. McNeill's prior deposition testimony, order him to reappear for deposition, and compel him to answer all questions to which he has asserted his Fifth Amendment rights, as well as other questions to be posed to him by counsel. Mr. McNeill did not respond to Defendants' Motion and failed to appear for oral argument.

## II. DISCUSSION

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. An individual may assert the privilege against self-incrimination "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972). This privilege applies at trial and during the discovery process. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

Unlike its application in criminal cases, reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits. *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (3d Cir. 1994) (citing *Palmigiano*, 425 U.S. at 318). Accordingly, use of the Fifth Amendment privilege in a civil case may carry some disadvantages for the party

seeking its protection. At the same time, use of the Fifth Amendment can substantially prejudice an adverse party who is deprived of "a source of information that might conceivably be determinative in a search for the truth." *Id.* It is for this reason that the trial court must carefully balance the interests of the party claiming the protections afforded by the Fifth Amendment and the opposing party's entitlement to equitable treatment. *Id.* at 192.

The Fifth Amendment privilege is not self-executing. *Roberts v. United States*, 445 U.S. 552, 559 (1980). The privilege can be waived by failing to invoke it in a timely manner and by disclosure of incriminating evidence. *Rogers v. United States*, 340 U.S. 367, 373 (1951). The privilege not only extends "to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant." *United States v. Yurasovich*, 580 F.2d 1212, 1215 (3d Cir. 1978) (internal quotation marks omitted) (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). When a party voluntarily reveals incriminating facts, that party cannot invoke the privilege to avoid disclosure of the details. *Rogers v. United States*, 340 U.S. at 373.

The party who claims the privilege against self-incrimination has the burden of establishing the existence of the privilege. *Brock v. Gerace*, 110 F.R.D. 58, 63 (D.N.J. 1986). In cases where the waiver of the privilege is disputed, the party claiming the privilege also has the burden of establishing its non-waiver. *Id.* at 63. As a waiver may occur in the absence of intent, the intent to waive one's privilege need not be shown. *Id*. (citing *In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672, 675 (D.C. Cir. 1979)). On the other hand, a waiver of an individual's Fifth Amendment right should not be lightly inferred. *In re Gi Yeong Nam*, 245 B.R. 216, 228 (Bankr. E.D. Pa. 2000) (citing *Emspak v. United States*, 349 U.S. 190, 197 (1955)).

There are certain circumstances under which a court may infer a Fifth Amendment waiver. Specifically, a waiver can be inferred when "(1) the witness's prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination." *Klein v. Harris,* 667 F.2d 274, 287 (2d. Cir. 1981). The first prong of the *Klein* test derives from the idea that privilege should not "furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition." *Id*. at 288 (internal quotation marks omitted) (quoting *United States v. St. Pierre,* 132 F.2d 837, 840 (2d Cir. 1942)). With regard to the second prong, for a court to find that a witness had reason to know that his statements would be interpreted as a waiver, the statements must have been:

> (a) 'testimonial,' meaning that they were voluntarily made under oath in the context of the same judicial proceeding, and (b) 'incriminating,' meaning that they did not merely deal with matters 'collateral'[1] to the events surrounding the commission of the crime, but directly inculpated the witness on the charges at issue.

*Klein*, 667 F.2d at 288 (citations omitted); *see also In re Gi Yeong Nam*, 245 B.R. at 235 n.9 (indicating that although the *Klein* formulation has not been expressly adopted by the Third Circuit Court of Appeals, it has gained widespread acceptance by other courts).

In *Cartier v. Micha, Inc*., the court denied plaintiff's motion to compel defendant's deposition testimony after defendant partially answered deposition questions before invoking his Fifth Amendment privilege. *Cartier*, No. 06-4699, 2008 WL 2061386 (S.D.N.Y. May 12, 2008). According to plaintiff, defendant had acquired and added diamonds to Cartier watches without

[1] To determine whether a matter is collateral, a court should consider whether a party's "inability to examine the witness precludes [it] from testing the truth of the witness's direct testimony, or whether the answers solicited might have established untruthfulness with respect to specific events of the crime charged." *Cartier,* No. 06-4699, 2008 WL 2061386 (S.D.N.Y. May 12, 2008) (internal citations omitted) (quoting *Dunbar v. Harris,* 612 F.2d 690, 692-94 (2d Cir. 1979)).

permission. *Id.* Arguing that defendant unlawfully sold these altered watches with the Cartier trademark intact, plaintiff brought claims of trademark infringement, false designation of origin, and trademark dilution. *Id.* at *1. During his deposition, defendant answered plaintiff's questions with varying specificity. *Id.* at *2. For example, he invoked his privilege against self-incrimination when asked if he had ever added diamonds to Cartier watches, sold or attached watch parts adorned by "after-market" diamonds, or kept complete records of his transactions involving altered watches. *See id.* However, he freely testified about which parts might fit a Cartier watch and admitted that he had "probably" acquired some unaltered Cartier watches for which he had no corresponding invoices. *Id.* at *2. Ultimately, the court found that defendant's varied responses regarding his invoices and transactions created a significant danger of distortion, satisfying *Klein*'s first prong. However, the court also found that defendant did not have reason to know that his responses to questions about transactions appearing not to involve diamonds would be construed as a waiver of his Fifth Amendment privilege. *Id.* at *3. Because plaintiff failed to satisfy *Klein*'s second prong, the court determined that defendant had not waived his privilege. *Id.* at *5.

Mr. McNeill's deposition testimony satisfies both prongs of the *Klein* test and therefore was sufficiently incriminating to constitute a waiver of his Fifth Amendment privilege. As in *Cartier*, Mr. McNeill's testimony created a danger of distorted truth. The Supreme Court has warned against "open[ing] the way to distortion of facts by permitting a witness to select any stopping place in the testimony." *Rogers v. United States*, 340 U.S. at 371. Here, if Mr. McNeill is permitted to invoke his privilege against self-incrimination after having already provided information about his interaction with Ms. Thorne, essentially "cherry-picking" his opportunities to give testimony, the facts of the very matter at issue will be left distorted and unclear.

Regarding his interaction with Ms. Thorne, Mr. McNeill testified that the massage the provided was more extensive, in terms of body parts engaged and intensity level, than that which Ms. Thorne had originally requested on her Client Intake Form. If not before, it was at least at this point in his deposition that Mr. McNeill waived his privilege. Mr. McNeill's reference to massaging Ms. Thorne's buttocks is certainly not collateral to the events surrounding Ms. Thorne's alleged assault. If Ms. Thorne's allegations of improper and nonconsensual sexual contact are true, this reference directly inculpates Mr. McNeill. Not only does Mr. McNeill's testimony regarding this aspect of Ms. Thorne's massage have the power to incriminate him, but it also opens the door for counsel for the other parties to justly inquire as to the events that followed. As the Supreme Court has stated, "[a] witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and the integrity of the factual inquiry." *In re Gi Yeong Nam*, 245 B.R. at 235 (quoting *Mitchell v. United States*, 526 U.S. 314 (1999)).

In contrast with *Cartier*, Mr. McNeill had reason to know that his answers to deposition questions could constitute a waiver of the privilege against self-incrimination. In fact, Mr. McNeill affirmatively stated that he understood that his answers to deposition questions could result in a waiver of the privilege. Although his criminal attorney advised him to refuse to answer certain questions and Mr. McNeill followed that advice, his criminal attorney also acknowledged, on the record and with Mr. McNeill present, that Mr. McNeill was attempting to walk a fine line between defending himself in this litigation and preserving his privilege.

As the party seeking to invoke his privilege against self-incrimination, Mr. McNeill has the burden to establish the existence of the privilege and, in cases, such as this one, where there is a dispute as to waiver, the existence of its non-waiver. While the Court may be reluctant to

find a Fifth Amendment waiver, Mr. McNeill has failed to satisfy this burden. Indeed, he has failed to raise any arguments regarding this subject. Thus, the Court will grant the Defendants' motion.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Compel Deposition and Testimony of Defendant Jerome McNeill. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge